**BRASSELER, U.S.A. I, L.P.,**
Plaintiff–Appellant,

v.

**STRYKER SALES CORPORATION**
and Stryker Corporation, Defen-
dants–Cross Appellants.

Nos. 98–1512, 98–1524.

United States Court of Appeals;
Federal Circuit.

July 9, 1999.

Rehearing Denied; Suggestion for
Rehearing In Banc Declined
Aug. 16, 1999.

John D. Fleming, Jr., Sutherland Asbill & Brennan, LLP, of Atlanta, Georgia, argued for plaintiff-appellant. With him on the brief were John L. North and Allegra J. Lawrence.

Gregory J. Vogler, McAndrews, Held & Malloy, Ltd., of Chicago, Illinois, argued for defendants-cross appellants. With him on the brief was Geoffrey A. Baker.

Of counsel on the brief was Alexander J. Simmons, Jr., Schreeder, Wheeler & Flint, LLP, of Atlanta, Georgia; and Paul W. Painter, Jr., Ellis, Painter, Ratterree & Bart LLP, of Savannah, Georgia.

Before PLAGER, LOURIE and CLEVENGER, Circuit Judges.

PLAGER, Circuit Judge.

## DECISION

Plaintiff Brasseler, U.S.A. I, L.P. ("Brasseler") appeals a judgment that its U.S. Patent No. 5,306,285 is invalid for violation of the "on sale" bar of 35 U.S.C. § 102(b). The judgment of invalidity was entered by the U.S. District Court for the Southern District of Georgia on motion for summary judgment by Defendants Stryker Sales Corporation and Stryker Corporation (collectively "Stryker"). *See Brasseler, U.S.A., I, L.P. v. Stryker Sales Corp.,* No. CV 497–184 (S.D. Ga. June 25, 1998) (memorandum order).

In ruling on Stryker's motion for summary judgment of invalidity, the district court additionally held that Stryker had "abandoned" its claim for attorney fees under 35 U.S.C. § 285 by failing to mention the claim in its motion for summary judgment. *Id.,* slip op. at 10–11. Thereafter the court entered final judgment on all claims. Stryker cross-appeals the dismissal of its claim for attorney fees under § 285.

We affirm the judgment of invalidity, vacate the dismissal of Stryker's claim for attorney fees, and remand for further proceedings consistent with this opinion.

## DISCUSSION

### I. On–Sale Bar

We review the district court's grant of summary judgment of invalidity without deference. *See Conroy v. Reebok Int'l, Ltd.,* 14 F.3d 1570, 1575, 29 USPQ2d 1373, 1377 (Fed.Cir.1994). Summary judgment is proper when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The ultimate determination of whether an invention was on sale within the meaning of § 102(b) is a question of law. *See Manville Sales Corp. v. Paramount Sys., Inc.,* 917 F.2d 544, 549, 16 USPQ2d 1587, 1591 (Fed.Cir.1990).

The patent at issue in this case is directed to surgical saw blades. It is undisputed that prior to the patent's § 102(b) critical date there was a sale of over three-thousand surgical saw blades embodying the invention set forth in the patent's claims. The sale was made by DS Manufacturing, Inc., a saw blade manufacturer, to an unincorporated operating division of Plaintiff Brasseler, which sells medical implements including surgical saw blades to hospitals. The district court held that this was a "sale" under § 102(b) and that the patent was therefore invalid.

Brasseler argues that the transaction should be held not to be a § 102(b) sale because of the special facts and circumstances of this case. In particular, Brasseler points out that joint inventors named on the patent were associated with the buyer (Brasseler) and seller (DS Manufacturing) to the transaction: two of the four named inventors were employed by Brasseler, one of the named inventors owned DS Manufacturing, and the fourth named inventor was employed by DS Manufacturing. Additionally, Brasseler alleges that it initiated development of the invention, and that at the time of the transaction DS Manufacturing had an arrangement with Brasseler under which DS Manufacturing was obligated to manufacture the patented saw blade solely for Brasseler. Brasseler further alleges that it was the equitable owner of the invention at all times, though the district court found to the contrary and Stryker contests this assertion. Finally, Brasseler points out that before selling the blades to hospitals it performs three further processing steps on the blades, namely, marking, packaging, and sterilization.

In arguing that these facts establish that there was no § 102(b) sale, Brasseler places heavy reliance on our previously used "totality of the circumstances" test under which all of the circumstances surrounding the sale are considered and weighed against the "policies" underlying § 102(b). *E.g., Envirotech Corp. v. Wes-*

*tech Eng'g, Inc.,* 904 F.2d 1571, 1574, 15 USPQ2d 1230, 1232 (Fed.Cir.1990) (citations omitted). Recently, the Supreme Court rejected this test, indicating a preference for "a definite standard for determining when a patent application must be filed." *Pfaff v. Wells Elecs., Inc.,* —— U.S. ——, —————— & n. 11, 119 S.Ct. 304, 311–12 & n. 11, 142 L.Ed.2d 261 (1998). The Court in *Pfaff* concluded that the on-sale bar of § 102(b) applies if, prior to the critical date, a product embodying the patented invention was "the subject of a commercial offer for sale .... [, and] the invention [was] ready for patenting." *Id.* at 525 U.S. at ——, 119 S.Ct. at 311–12.

Since the *Pfaff* decision, this court has held a patent invalid for violation of the on-sale bar based on "the Supreme Court's two-part test [enunciated in *Pfaff*] without balancing various policies according to the totality of the circumstances as may have been done in the past." *Weatherchem Corp. v. J.L. Clark, Inc.,* 163 F.3d 1326, 1333, 49 U.S.P.Q.2d 1001, 1006 (Fed.Cir. 1998). The present case illustrates the shortcomings of the "totality of the circumstances" test. Indeed, Brasseler's discussion of this test and the "policies" of § 102(b) displays why the test leads to unpredictable results.

The transaction at issue undisputedly was a "sale" in a commercial law sense. *See In re Caveney,* 761 F.2d 671, 676, 226 USPQ 1, 4 (Fed.Cir.1985) ("It is well settled that a sale is a contract between parties to give and to pass rights of property for consideration which the buyer pays or promises to pay the seller for the thing bought or sold."). Furthermore, it is undisputed that the invention was "ready for patenting" at the time of the sale. *Pfaff,* 525 U.S. at ——, 119 S.Ct. at 312.

Brasseler points out that we have recognized that "a sale or offer to sell under 35 U.S.C. § 102(b) must be between two separate entities." *Caveney,* 761 F.2d at 676, 226 USPQ at 4. However, Brasseler and DS Manufacturing are clearly separate in a corporate sense: there is no common ownership or control of the two corporate entities. We have held entities separate for purposes of § 102(b) in cases in which there was much more overlap between the buyer and seller than there is here. *See id.* at 673–74, 676, 761 F.2d 671, 226 USPQ at 2, 4 (upholding determination that buyer and seller are separate entities for purposes of § 102(b) despite the fact that corporate entity that wholly owned seller also owned 49% of buyer and buyer was formed to be seller's exclusive seller in the United States); *Ferag AG v. Quipp Inc.,* 45 F.3d 1562, 1565, 1567, 33 USPQ2d 1512, 1515 (Fed.Cir.1995) (overturning district court conclusion that buyer and seller were not separate for purposes of § 102(b) despite the fact that seller owned 50% of buyer and buyer was seller's exclusive distributor). The fact that Brasseler may have retained control over the manufacturing of the patented invention as a result of the alleged exclusive relationship between the two companies says nothing about the basic corporate relationships.

We decline Brasseler's invitation to establish a new exception based on the fact (alleged) that it and DS Manufacturing were joint developers and as such a sale between the two of them should not be considered a § 102(b) sale. It is true that Brasseler and DS Manufacturing both employed one or more of the named inventors. However, we have "never recognized a 'joint development' exception to the 'on sale' bar." *Buildex Inc. v. Kason Indus., Inc.,* 849 F.2d 1461, 1465, 7 USPQ2d 1325, 1328 (Fed.Cir.1988).

Brasseler invites us to follow the holding in *Ex–Cell–O Corp. v. Litton Industrial Products, Inc.,* 479 F.Supp. 671, 689, 205 USPQ 612, 629 (E.D.Mich.1979). In *Ex–Cell–O,* the district court opined that because the invention was jointly developed by the buyer and seller, each employing one of the named inventors, the sale between them was not a § 102(b) sale. However, the district court failed to provide any reasoning for this conclusion. The court did note that the accused infringer

never disputed the patentee's contention that if the invention was jointly developed, the on-sale bar does not apply. *See id.* at 689 n. 14, 479 F.Supp. 671, 205 USPQ at 629 n. 14. In any event, we are not bound by the district court decision in *Ex–Cell–O.* Brasseler has failed to convince us that we should adopt the holding in that case.

Brasseler also cites *M & R Marking Sys., Inc. v. Top Stamp, Inc.,* 926 F.Supp. 466, 468–70 (D.N.J.1996), in which the district court declined to apply the on-sale bar to a sale from a manufacturer to a sales corporation that employed the sole named inventor and had asked the manufacturer to make the patented product pursuant to the patented design. Again, we have no obligation to follow the district court's reasoning. Furthermore, the case before us is distinguished in at least one significant respect. In *M & R Marking,* there was only one inventor and that inventor was employed by the buyer. Here, in contrast, DS Manufacturing (the seller) was owned by one of the inventors and it employed a second inventor. By way of the sale to Brasseler, these inventors commercially exploited the invention prior to the critical date.

This is not a case in which an individual inventor takes a design to a fabricator and pays the fabricator for its services in fabricating a few sample products. Here DS Manufacturing made a large number of the agreed-upon product for general marketing by Brasseler. The transaction was invoiced as a sale of product, and the parties understood the transaction to be such.

Nor are we persuaded to a different conclusion by the allegation that Brasseler (the buyer) was the 'equitable owner' of the invention at the time of the sale. For one, Brasseler's evidence in this regard is unconvincing, even when viewed in the light most favorable to Brasseler, as we must in reviewing the summary judgment. *See Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.,* 145 F.3d 1303, 1307, 46 USPQ2d 1752, 1755 (Fed.Cir.

1998). However, even accepting the allegation as true, the fact that Brasseler had ownership rights in the invention when an embodiment thereof was produced and sold to Brasseler in large quantity for resale by Brasseler does not provide a ground, on these facts, for reaching a different result.

Additionally, the fact that, as alleged, Brasseler (the buyer) may have initiated development of the invention is also not persuasive. *See Buildex,* 849 F.2d at 1465, 7 USPQ2d at 1328 ("Traulsen [the buyer] may have provided the impetus for making the invention, but that does not make the transaction any less an offer for sale."). We are also not persuaded by Brasseler's assertion (made at oral argument) that the sale at issue here was not in the public and thus was not a § 102(b) sale. As we noted in *Buildex,* "[t]he 'public' [for purposes of § 102(b) ] is not limited to ultimate users of the product...." 849 F.2d at 1465, 7 USPQ2d at 1329. Similarly, in *Caveney* we rejected the argument that sales activity kept secret from the trade does not trigger the on-sale bar. 761 F.2d at 675–76, 226 USPQ at 3–4.

Lastly, we are not persuaded by the fact that Brasseler may have taken certain additional processing steps (*i.e.,* marking, packaging, and sterilization) prior to selling the saw blades to hospitals. This alleged fact is immaterial because the saw blades sold by DS Manufacturing to Brasseler undisputedly included all of the limitations of the patent claims; the additional steps allegedly performed by Brasseler are not recited in the claims. Thus the additional steps undertaken for marketing of the product do not change the basic transaction—a sale of completed product in quantity, constituting a commercial sale of a product ready for patenting, and for marketing by Brasseler.

In sum, it is undisputed that the invention was "ready for patenting" at the time of the sale. *Pfaff,* 525 U.S. at ——, 119 S.Ct. at 312. Furthermore, Brasseler has

failed to convince us that the sale was not "commercial" or is otherwise exempt from § 102(b). *Id.* The cases on which Brasseler's argument rests are premised on the now-discarded "totality of the circumstances" rule, and although the facts here are in some respects distinguishable from our prior cases in which we have held there to be on-sale bars, the differences do not persuade us to exempt the sale here from the reach of § 102(b). Accordingly, we affirm the judgment of invalidity.

## II. Attorney Fees

■ Stryker's claim for attorney fees under § 285 should not have been dismissed on the basis that Stryker did not raise the claim in its motion for summary judgment of invalidity under § 102(b). Brasseler in effect agrees: it does not oppose Stryker's cross-appeal on this matter, though it strongly contests whether, on the merits, Stryker is entitled to attorney fees under § 285.

The district court based its decision on the Eleventh Circuit decisions in *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587 (11th Cir.1995), and *Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp.*, 10 F.3d 1563 (11th Cir.1994). However, properly read, these decisions merely stand for the unremarkable proposition that assertions made in the pleadings (*e.g.*, complaint or answer), but not made in opposition to a motion for summary judgment, need not be considered by the district court or the appellate court in ruling on the motion for summary judgment. *See Resolution Trust,* 43 F.3d at 598–99; *Road Sprinkler,* 10 F.3d at 1568.

*Road Sprinkler* includes the perhaps unfortunate and misleading statement that a district court can "properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment." 10 F.3d at 1568. A literal reading of this statement would mean that if a plaintiff moves for summary judgment on one of its claims, but not other claims, those other claims can be deemed abandoned. That cannot be what the Eleventh Circuit meant. To the contrary, in *Road Sprinkler,* the defendant moved for summary judgment on both of the plaintiff's theories for its case, namely, the successorship doctrine and alter ego. *See id.* The plaintiff failed to address the alter ego theory in its opposition brief, as noted by the court; the plaintiff also did not raise the theory in its own motion for summary judgment. *See id.* Under the circumstances, the Eleventh Circuit understandably concluded that the district court properly treated the plaintiff's alter ego theory "as abandoned" and that the theory was "no longer an issue in [the] case." *Id.*

■ Here, in contrast, Stryker's claim for attorney fees under § 285 was never put in issue before the district court: neither party moved for summary judgment on the issue. Furthermore, Stryker was not obligated to raise the issue in its motion for summary judgment of invalidity under § 102(b). For one, a claim for attorney fees under § 285 is a separate claim. Additionally, an award of attorney fees can only be made in "exceptional cases" and only to the "prevailing party." 35 U.S.C. § 285 (1994). Until the "prevailing party" is known, a party that has pled a claim for attorney fees under § 285 cannot be expected to bring a motion for such fees. *See DH Tech., Inc. v. Synergystex Int'l, Inc.*, 154 F.3d 1333, 1345, 47 USPQ2d 1865, 1874 (Fed.Cir.1998) (vacating the "district court's decision on exceptional case status because the issue cannot be addressed until there is a prevailing party").

Accordingly, we hold that the district court erred in concluding that Stryker abandoned its claim for attorney fees under § 285 by not raising the claim in its motion for summary judgment under § 102(b). Stryker appears to base its § 285 attorney fees claim on allegations in addition to those involving the sale considered here; we offer no opinion on those allegations, nor do we otherwise opine as

to the merits of Stryker's § 285 claim. We also offer no opinion as to whether Stryker has adequately pled its § 285 claim.

## CONCLUSION

The district court's judgment of invalidity is affirmed, the dismissal of Stryker's § 285 claim is vacated, and the case is remanded.

*AFFIRMED–IN–PART, VACATED–IN–PART, AND REMANDED.*

## COSTS

The parties shall bear their own costs.